**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**LIFE INSURANCE COMPANY OF**
**NORTH AMERICA,**

                                             **Plaintiff,**

                 **-vs-**                                              **10-CV-661-WMS-HKS**

**ASHLEY JOHNSON, as Administrator of**
**the Estate of Steven L. Johnson, and**
**KIMBERLY JOHNSON,**

                                             **Defendants.**

_____


### REPORT, RECOMMENDATION AND ORDER

         This interpleader action was commenced by the Life Insurance Company of

North America ("LINA") on August 11, 2010, alleging original federal question

jurisdiction under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29

U.S.C. § 1001, *et seq*., and was referred to the undersigned by the Hon. Richard J.

Arcara,[1] pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), for all pretrial matters and to hear

and report upon dispositive motions.  Dkt. #9.

         The complaint seeks judicial determination of the rights of defendants to

insurance benefits due under three policies issued by LINA for the benefit of employees

of the Northrop Grumman Corporation ("NGC").  LINA, as plaintiff/stakeholder, has

moved pursuant to Rule 22 of the Federal Rules of Civil Procedure for entry of a final

decree of interpleader granting leave to deposit with the Clerk of the Court the total

_____

         [1]The case was subsequently transferred to the docket of Hon. William M. Skretny.  Dkt. #28.

amount of sums due under the policies, plus applicable interest, and dismissing LINA from the case with prejudice.  Dkt. #17.

For the following reasons, it is respectfully recommended that the motion be granted.

## BACKGROUND

As alleged in the interpleader complaint (Dkt. #1), on June 1, 2004, LINA issued three group accident insurance policies to policyholder Trustee of the Group Insurance Trust for Employers in the Manufacturing Industry, for the benefit of NGC employees: (1) Group Accident Policy No. OK 980036 (Dkt. #1, Exh. A); (2) Group Accident Policy No. OK 980037 (Dkt. #1, Exh. B); and (3) Blanket Accident Policy No. ABL 980022 (Dkt. #1, Exh. C) ( together, "the Policies").  Steven L. Johnson became an employee of NGC in April 2001, and designated his wife, defendant Kimberly Johnson, as sole beneficiary under each of the Policies.

On December 11, 2007, New York State Supreme Court Justice Janice M. Rosa granted a Judgment of Divorce dissolving the Johnsons' marriage, and incorporating by reference a prior Separation and Settlement Agreement resolving, among other things, the equitable distribution of marital property, maintenance, and child support.[2]  *See* Dkt. #1, Exhs. E, F.  Mr. Johnson did not re-designate a beneficiary of the LINA Policies upon entry of the Separation Agreement or the Judgment of Divorce, or at any time

---

[2]It is noted here that, under Article 29 of the Separation and Settlement Agreement, each party agreed to maintain life insurance policies in full force and effect in the cumulative amount of $200,000 for the husband and $150,000 for the wife, with the proceeds to be held in trust for the benefit of their three children.  Dkt. #1, Exh. E, pp. 16-17.

prior to his death on February 12, 2009 as a victim of the crash of Colgan Air Flight 3407 in Clarence, New York.

Under the terms of the Policies, LINA became obligated upon Mr. Johnson's accidental death to pay proceeds totaling $1,254,000.00, plus certain additional sums to qualifying survivors, as computed according to a compensation-based formula. *See* Dkt. #1, Exh. H.  The Policies also provide that, in the event there is no named beneficiary, payment may be made under Policy Nos. OK 980036 and OK 980037 to the first surviving class of (1) spouse, or (2) the estate of the insured, and under Policy No. ABL 980022 to the first surviving class of (1) spouse, or (2) children, (3) parents, (4) siblings, or (5) the estate of the insured.  Dkt. #1, ¶ 13.

On March 3, 2009, NGC filed an employer's claim form with the insurer's Group Life & Disability Benefits office, along with a certified death certificate and beneficiary designation naming Kimberly Johnson, "Ex-Spouse," as the beneficiary of the Policies. Dkt. #1, Exh. D.  Then, on April 27, 2009, defendant/claimant Ashley Johnson, as co-administrator of the Estate of Steven Johnson ("the Estate"), filed an Order to Show Cause with the Surrogate's Court, Niagara County, New York, naming CIGNA (LINA's corporate parent) as a respondent, and seeking (among other things) an order directing that the proceeds of the Policies be paid over to the Estate.  *See* Dkt. #1, Exh. I.  The order was signed by State Supreme Court Justice Matthew J. Murphy on May 7, 2009, but the record before this Court does not reflect whether any further action has been taken in the Surrogate's Court.

On July 27, 2009, Kimberly Johnson wrote to LINA "to formally submit a claim for benefits for a group life insurance issued to the late Steven L. Johnson under the

Northrup Grumman Health Plan …."  Dkt. #1, Exh. J.  The letter was marked received

by the Group Life & Disability Benefits Office on July 31, 2009.  On August 3, 2009,

counsel for the Estate wrote to LINA explaining her client's position that the proceeds of

the Policies should be paid to the Estate.  Dkt. #1, Exh. K.  This letter was marked

received by the Group Life & Disability Benefits Office on August 7, 2009.  The Estate

filed a claim form with LINA on September 3, 2009 (Dkt. #1, Exh. L), and Kimberly

Johnson filed a claim form with LINA on September 28, 2009 (Dkt. #1, Exh. M).  The

record reflects that no action was taken by LINA on these claims until the filing of the

interpleader complaint in this action on August 11, 2010, in which LINA alleges that it is

"unable to discharge its admitted liability without exposing itself to multiple liabilities or

multiple litigation or both."  Dk. #1, ¶ 24.

Submitted with the interpleader complaint was a "Motion for Final Decree of

Interpleader" (Dkt. #2), which was not initially answered or acted upon prior to

automatic referral of the matter to the Court's Alternative Dispute Resolution program;

subsequent referral to the undersigned; and entry of a Scheduling/Case Management

Order pursuant to Fed. R. Civ. P. 16(b) and Local Rule 16.2 (Dkt. #16).  LINA then

renewed the motion, seeking relief in the form of "leave to deposit its admitted, full and

total liability, $1,254,000.00, plus applicable interest, with the Clerk of this Court …,"

and dismissing it from the action with prejudice.  Dkt. #17-1.

Defendants submitted a joint response asserting no objection to interpleader

relief, but requesting that the Court order LINA to pay prejudgment interest on the

deposit at a rate and in an amount sufficient to account for the unreasonable delay in

filing this action.  Dkt. #20.  Defendants contend that LINA, as the claims administrator

for the Policies, had a fiduciary duty under ERISA and implementing Department of Labor regulations to notify the claimants of its determination within a reasonable time – specifically, not later than 90 days after receipt of the claim for benefits (subject to an additional 90-day extension under "special circumstances" and upon written notice), as provided in 29 C.F.R. § 2560.503-1(f)(1).  According to defendants, LINA breached this duty by taking no action for nearly 11 months following its acknowledged receipt of the competing claim forms in September 2009, causing compensable financial harm to the defendants in the form of penalties and interest due and accruing on unpaid New York State estate taxes.  Defendants seek an order directing LINA to pay prejudgment interest on the amount deposited with the Clerk of the Court at the statutory rate of 9% set forth in N.Y.C.P.L.R. § 5004, measured from the expiration of 90 days after the filing of the benefit claims to the date of deposit.  For its part, LINA has advised the Court of its position that an award of prejudgment interest is within the Court's discretion, but submits that any such award should be interest that has accrued in the normal course of business.

In their supplemental submission following oral argument, defendants advised the Court that they have resolved their dispute as to proper entitlement to the insurance proceeds that are the subject matter of the interpleader complaint,[3] leaving for the

---

[3]At oral argument, seeking guidance as to proper resolution of the competing claims of entitlement to the proceeds, the Court requested supplemental briefing on the issue as to whether ERISA (which requires fiduciaries to administer employee benefits plans "in accordance with the documents and instruments governing the plan," 29 U.S.C § 1104(a)(1)(D)), pre-empts New York Estates, Powers & Trusts Law  § 5-1.4(a)(1) (which, upon divorce, automatically revokes the designation of a spouse as a life insurance or employee benefits plan beneficiary).  Having been advised that the competing claims have been resolved, the Court finds no need to address the question of ERISA pre-emption as it relates to determining which of the claimants is entitled to the proceeds.

Court's determination only the amount of interest LINA should be directed pay upon depositing the proceeds with the Clerk.  What follows is the Court's recommendation for disposition of this issue, in accordance with 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1).

## DISCUSSION

The parties agree that this action is properly maintained under ERISA, which provides "a uniform body of benefits law" to govern the administration of employee benefit plans.  *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990): *Hattem v. Schwarzenegger*, 449 F.3d 423, 430 (2d Cir. 2006).  Central to ERISA's framework is the requirement that employee benefit plan administrators discharge their fiduciary duties with respect to the plan:

> … solely in the interest of the participants and beneficiaries … with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims ….

29 U.S.C. 1104(a)(1).  "In this context, prudence 'is measured according to the objective prudent person standard developed in the common law of trusts.' "  *LaScala v. Scrufari*, 479 F.3d 213, 219 (2d Cir. 2007) (quoting *Katsaros v. Cody*, 744 F.2d 270, 279 (2d Cir.), *cert. denied*, 469 U.S. 1072 (1984)). Thus, the courts have regarded the fiduciary duties imposed by ERISA as "those of trustees of an express trust-the highest known to the law."  *Donovan v. Bierwirth*, 680 F.2d 263, 272 n. 8 (2d Cir.), *cert. denied*, 459 U.S. 1069 (1982).

Under ERISA § 502, the statute's civil enforcement provision, a fiduciary, plan participant, or beneficiary of an employee benefit plan may bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan …."  29 U.S.C. § 1132(a)(3).  The Supreme Court has described this section as a "catchall" provision that acts as "a safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy."  *Varity Corp. v. Howe*, 516 U.S. 489, 512, (1996).

As recognized by the Second Circuit, an award of prejudgment interest on the delayed payment of plan benefits may provide a measure of the "appropriate equitable relief" available under ERISA § 502(a)(3)(B).  *See, e.g., Dunnigan v. Metropolitan Life Ins. Co.*, 277 F.3d 223, 228-29 (2d Cir. 2002).  As stated in *Dunnigan*:

> [T]he mere fact that money is sought does not necessarily classify the relief as damages, rather than equitable relief.  "Equity sometimes awards monetary relief …."  Where interest is sought to make the plaintiff whole by eliminating the effect of a defendant's breach of a fiduciary duty, we see no reason why such interest should not be deemed "appropriate equitable relief" within the scope of § 502(a)(3)(B).

*Id.* at 229 (quoting *Clair v. Harris Trust & Savs. Bank*, 190 F.3d 495, 498 (7th Cir. 1999), *cert. denied*, 528 U.S. 1157 (2000)); *see also Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38, 54 (2d Cir. 2009) ("an award of prejudgment interest may be needed in order to ensure that the defendant not enjoy a windfall as a result of its wrongdoing") (citing cases).

> The essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss. … By compensating for the loss of use of money due as damages from the time the claim accrues until judgment is entered, an award of prejudgment interest helps achieve the goal of restoring a party to the condition it enjoyed before the injury occurred.

*City of Milwaukee v. Cement Div., Nat. Gypsum Co.*, 515 U.S. 189, 195-96 (1995).

It is also well recognized that, because "interpleader is an equitable remedy," *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990), the court has the discretion to order a stakeholder to include "prefiling" interest with its deposit of disputed funds.  *See A & E Television Networks, LLC v. Pivot Point Entertainment, LLC*, 771 F. Supp. 2d 296, 303 (S.D.N.Y. 2011) (citing 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE & RICHARD L. MARCUS, FEDERAL PRACTICE & PROCEDURE § 1716 at 650–51 (discussing court's discretion to direct "a dilatory stakeholder to deposit interest for the pre-action period during which the stakeholder failed to seek interpleader or make payment")).   However, the courts have found prefiling interest to be payable  by a disinterested stakeholder "only when it improperly and excessively delays the filing of the interpleader action."  *Avant Petroleum, Inc. v. Banque Paribas*, 652 F. Supp. 542, 544 (S.D.N.Y. 1987) (citing cases), *aff'd*, 853 F.2d 140 (2d Cir. 1988).

In light of these considerations, the Circuit has generally stated that, in its discretionary determination whether to award prejudgment interest to a successful claimant under an ERISA-regulated employee benefits plan, the district court should be guided by the following equitable factors: "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other

general principles as are deemed relevant by the court." *Jones v. UNUM Life Insur. Co. of America*, 223 F.3d 130, 139 (2d Cir. 2000) ("*Jones* I") (citing cases).  Courts have also considered such factors as whether the stakeholder unreasonably delayed in instituting the action or depositing the funds with the court, whether the stakeholder used the funds for its benefit and would be unjustly enriched at the expense of the claimants who have claims to the funds, and whether the stakeholder eventually deposited the funds into the court's registry.  *See Wolfe v. Estate of Conzen*, 791 F. Supp. 2d 348, 352 (S.D.N.Y. 2011) (citing cases).  In addition, "[s]ince prejudgment interest is 'an element of [the plaintiff's] complete compensation,' the same considerations that inform the court's decision whether or not to award interest at all should inform the court's choice of interest rate." *Jones* I, 223 F.3d at 139 (quoting *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989)).

Applying these principles to the circumstances presented here, the Court finds that LINA's deposit of the proceeds to the Clerk's registry should contain an appropriate amount as prejudgment interest.  First and foremost, LINA has provided no explanation for its delay in filing this interpleader action.  The record reflects that LINA should have been placed on notice of the competing claims for benefits under the Polices in early May 2009, upon service of a copy of the Surrogate's Order to Show Cause.  In any event, it is beyond dispute that LINA had actual notice of the competing claims no later than September 28, 2009, upon receipt of Kimberly Johnson's formal claim form.  Based upon a reasonable interpretation of the federal regulations cited above governing the procedures for processing claims under ERISA-regulated employee benefit plans, and absent written notice of any special circumstances warranting an extension, LINA should

have notified the claimants of its determination within 90 days after receipt of the last claim (*i.e.*, by approximately December 28, 2009), yet waited until August 11, 2010 to file this action and seek an order of interpleader.  In the meantime, the insurance proceeds remained unavailable to either claimant for investment purposes, or to satisfy the estate tax liability assessed and accruing as of the date the proceeds became payable under the terms of the Policies, as indicated by the New York State tax warrant and penalty and interest calculations submitted as exhibits to the attorney affidavit of Gary F. Kotaska, which was filed as defendants' joint supplemental submission following oral argument.  *See* Dkt. #32, Exhs. A & B.  During that time, and up to the present day, the disputed funds have remained "on deposit at LINA" earning interest only at the average national bank MMDA (Money Market Deposit Account) rate of .29%, as required by California regulations.  Dkt. #25 (Aff. of Sandy Townsend, LINA's Group Claims Senior Specialist), ¶ 7.

On the other hand, the underlying dispute between the defendants regarding proper disbursement of the insurance proceeds was not resolved until sometime in late 2011.  *See* Dkt. #32, ¶ 3.  The logical inference to be drawn is that the proceeds would have remained unavailable to either claimant for investment purposes or to satisfy tax liabilities even if LINA had deposited the funds with the Court within a reasonable time following receipt of formal notice of the competing claims.  Accordingly, LINA should not be assessed full responsibility for whatever lost investment opportunities, estate tax liabilities, or other financial harm defendants might suffer as a result of LINA's delay in seeking interpleader relief.

Furthermore, there is little support in the record for defendants' assertion in its original joint response that LINA has derived substantial profits as a result of its retention of the insurance proceeds.  In this regard, the CIGNA Corporation News Release relied on for this contention indicates that the after-tax profit margin of 9.5% reported for CIGNA's group disability, life, and accident insurance operations for the year ending December 31, 2010 was based on "continued strong retention and new sales of our disability management programs," as well as profits on the sale of its workers' compensation and case management businesses.  Dkt. #20, Exh. B, p. 5.  This document contains no further information from which the reasonable inference can be drawn that the profits reported by CIGNA were somehow directly (or even indirectly) related to LINA's retention of the life insurance proceeds at issue.

Nonetheless, overall considerations of fairness and the relative equities of the situation, including the plan administrator's breach of "the highest duty known to the law," *LaScala*, 479 F.3d at 221, and the overall remedial purpose of the ERISA statute, require some measure of prejudgment interest to remedy the loss of investment value and tax penalties resulting from the unreasonable delay of eleven months between receipt of formal notice of the competing claims and filing the interpleader complaint. Indeed, LINA does not seriously dispute that the deposit of the proceeds into the Court's registry should be accompanied by an appropriate amount of pre-filing interest. Accordingly, the focus of the dispute to be resolved by the Court on this motion has narrowed to determining the appropriate interest rate to apply to the deposit.

As a general matter, where the cause of action arises from a federal statute, the scope of the remedy is governed by federal law.  *See, e.g., Cottrill v. Sparrow, Johnson*

-11-

& *Ursillo, Inc.*, 100 F.3d 220, 224 (1st Cir. 1996); *Connecticut General Life Ins. Co. v. Cole*, 821 F. Supp. 193, 202 (S.D.N.Y. 1993).  However, where federal law is silent, as it is with respect to the prejudgment interest rate, courts have broad discretion to select an appropriate rate, and they may look to outside sources, including state law, for guidance. *Cottrill*, 110 F.3d at 224-25 (citing *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 983-85 (5th Cir. 1991)).

In this regard, defendants urge this Court to apply New York's statutory prejudgment interest rate of 9%, while LINA urges application of the postjudgment interest rate established by 28 U.S.C. § 1961(a), "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment." Defendants cite *Alfano v. CIGNA Life Ins. Co. of New York*, 2009 WL890626 (S.D.N.Y. April 2, 2009), involving a successful challenge to the termination of benefits under a long-term disability policy issued by CIGNA.  In considering whether to award prejudgment interest for the period between the date on which the plaintiff's benefits ceased until the date of entry of judgment, the court found that all of the equitable factors set forth in *Jones v. UNUM Life* weighed in the plaintiff's favor, and applied the 9% rate set forth in N.Y.C.P.L.R. § 5004.  The court noted that, while there is no applicable federal statute establishing a prejudgment interest rate, New York has made "an objective legislative judgment that 9% is an appropriate rate."  *Alfano*, 2009 WL890626, at *7.  Citing to "numerous courts" that have employed this rate, the court rejected the argument that the Treasury rate constitutes a more appropriate measure of

prejudgment interest, finding "no reason to think that that rate more accurately captures the time value of money in New York, or the true loss to plaintiff, particularly given the New York State Legislature's determination otherwise." *Id.*

For its part, LINA cites decisions from several district courts within the Second Circuit – including courts within this district – that have assessed prejudgment interest based on the Treasury rate under 28 U.S.C. § 1961(a), as a "fair measure of the cost of money over the relevant time period." *McLaughlin v. Cohen*, 686 F. Supp. 454, 458 (S.D.N.Y. 1988). For example, in *Critchlow v. First Unum Life Ins. Co.*, 377 F. Supp. 2d 337 (W.D.N.Y. 2005), following application of the equitable factors outlined in *Jones*, Judge Larimer determined that the appropriate rate for an award of prejudgment interest to fully compensate the beneficiary of an accidental death and dismemberment policy following a six year delay in payment was to be determined by averaging the weekly interest rates under 28 U.S.C. § 1961 for the period from the date of the insurance company's denial of the claim. *Id.* at 348-49. In *Jones* itself, the district court awarded prejudgment interest at the § 1961 rate, but made no findings  for meaningful appellate review as to why application of that rate would adequately compensate the plaintiff.  The Second Circuit remanded the case for further findings in this regard, stating:

> The suitability of that postjudgment interest rate for an award of prejudgment interest will depend on the circumstances of the individual case, and the court need not limit the award of prejudgment interest to the rate at which the injured party would have lent money to the government.  The court may, for example, consider whether the plaintiff would have invested the money at some higher rate, or it may take into account the rate of interest the defendant would have had to pay to borrow the money it withheld from the plaintiff.

*Jones*, 223 F.3d at 139.  On remand, the district court adhered to the § 1961 rate, stating

that it did so because of the closeness of the case, because "it was the most fair and

equitable rate available," and because "the evidence [plaintiff] offered to prove why a higher

rate of interest was justified, was unpersuasive." *Jones v. UNUM Life Insur. Co. of America*,

14 Fed.Appx. 44, 46 (2d Cir.2001) ("*Jones* II") (quoting district court's decision). On appeal,

the Second Circuit affirmed, stating as follows:

> Although we do not see that the rate of prejudgment interest should be
> determined by the closeness of the case, we see no error or abuse of
> discretion in the court's assessment of the persuasiveness of [the plaintiff]'s
> evidence to support a higher rate than that set out in § 1961.  The record
> indicates that [the plaintiff]'s original proffers were of a general nature and that
> she made no attempt on remand to supplement her proof that a higher
> interest rate was necessary in order to compensate her fully.  We cannot
> conclude on this record that the court's use of the § 1961 rate was an abuse
> of discretion.

*Id.*

In *Algie v. RCA Global Communications, Inc.*, 891 F. Supp. 875 (S.D.N.Y. 1994),

*aff'd*, 60 F.3d 956, 960 (2d Cir. 1995), relied on by the circuit court in *Jones* I, several long-

term RCA employees successfully challenged the payment of severance under an ERISA-

regulated employee benefit plan following termination of their employment as a result of the

stock sale of RCA to MCI.  The district court found that, considering the six-year delay in the

plaintiffs' receipt of the benefits they were due under the plan, prejudgment interest should

be awarded "as a means of ensuring that plaintiffs are made whole and that defendants do

not profit by their failure to comply with their ERISA obligations."  891 F. Supp. at 899.  As

in this case, the beneficiaries urged the court to calculate the amount of the award by

applying the prejudgment interest rate of N.Y.C.P.L.R. § 5004, while the plan administrators

argued for application of the postjudgment interest provision of 28 U.S.C. § 1961.  After

noting that the absence of an applicable federal statutory prejudgment interest provision

had resulted in disagreement among the federal courts as to whether to apply prejudgment

interest rates established by state law, or the postjudgment interest provision of § 1961, the

court stated:

> We may fairly infer that the court has some discretion in this matter, guided
> by the understanding that the aim of the relief awarded is to make the
> plaintiffs whole, but not to give them a windfall.  Judged by these concerns,
> the federal rate is more appropriately used here since it provides a closer
> approximation of the likely return on plaintiffs' unpaid benefits since 1988.
> Since interest rates in that period were generally below nine percent, an
> award under the CPLR provision would overcompensate plaintiffs, a result
> that we are instructed to avoid.

*Id.* (citations omitted).

It becomes apparent upon review of these and other pertinent holdings that, in

balancing the equities to determine the appropriate rate to apply to prejudgment interest

calculations in ERISA cases, and to best account for the overriding consideration "that [the]

injured party is fully compensated for its loss …,"  *City of Milwaukee*, 515 U.S. at 195, courts

will most often resort to the rate most closely aligned with the actual lost interest income

suffered.  In this case, as demonstrated by the discussion above, the "unpersuasive" nature

of the proof regarding whether LINA was unjustly enriched as a direct result of its

unreasonable delay in filing the action, and the absence of any proof at all as to "whether

the [claimants] would have invested the money at some higher rate, …or … the rate of

interest the [fiduciary] would have had to pay to borrow the money it withheld from the

[claimants]," *Jones* I, 223 F.3d at 139, leads to the conclusion that the amount of

prejudgment interest to be awarded should be calculated based on a rate corresponding

to actual lost interest income suffered during the period between December 28, 2009 (90 days after LINA's receipt of actual notice of the competing claims), and August 11, 2010 (the date LINA filed this action and first sought a decree of interpleader).

In this Court's view, the appropriate rate for calculating the award of prejudgment interest is most closely reflected by the Treasury rate prescribed for postjudgment interest under 28 U.S.C. § 1961.  Under all of the circumstances presented, application of the Treasury rate should adequately compensate the claimants for loss of the use of the insurance proceeds during the pendency of their entitlement dispute, without "transforming the award of prejudgment interest from a compensatory damage award to a punitive one in contravention of ERISA's remedial goal of simply placing the [claimants] in the position [they] would have occupied but for the [fiduciary]'s wrongdoing." *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 618 (6th Cir.1998).  Finally, as indicated by the weight of authority on this matter, "use of the federal rate promotes uniformity in ERISA cases and provides an objective measure of the value of money over time." *Edmond v. Hughes Aircraft Co.*, 1998 WL 782016, at *2 (E.D.Va. Nov. 6, 1998) (citing *Cottrill*, 100 F.3d at 225); *see also Feldman's Medical Center Pharmacy, Inc. v. CareFirst, Inc.*, ___F. Supp. 2d___, ___, 2011 WL 5433754, at *16 (D.Md. Nov. 9, 2011).

## CONCLUSION

For the foregoing reasons, it is respectfully recommended that the District Court grant LINA's motion (Dkt. #17) for a final decree of interpleader, as follows:

1.    LINA should be granted leave to deposit with the Court's Registry, as the admitted, full and total liability under Policy Nos. OK 980036, OK 980037, and ABL 980022,

the amount of $1,254,000.00, plus prejudgment interest calculated for the period between December 28, 2009, and August 11, 2010, at a rate to be determined in accordance with 28 U.S.C. § 1961.  The District Court should also consider directing the parties to submit a joint proposed calculation under this guidance.

    2.    Upon acknowledgment on the record that such deposit has been received by the Clerk of the Court, LINA should be dismissed from this case as a party or participant, with prejudice, and the defendants/claimants and/or any other remaining parties should be directed to litigate or settle their claims regarding the insurance proceeds without any further involvement from LINA.  Defendants/claimants herein should be perpetually enjoined, without bond or surety, from maintaining any continued or further proceedings against LINA in any way relating to Policy Nos. OK 980036, OK 980037, and/or ABL 980022, or the subject proceeds of those policies.

    3.    Any and all liens asserted against the proceeds of  Policy Nos. OK 980036, OK 980037 and/or ABL 980022, including but not limited to any attorneys' liens, costs, fees, and charges on behalf of any of the parties to this action, should be considered resolved and of no force and effect.

Accordingly, pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed. R. Civ. P. 72(b), and Rule 72(b) of the Local Rules of Civil Procedure for the Western District of New York.

-17-

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.   *See, e.g., Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the  District Court's Order.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Local Rule 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."  Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

DATED:      Buffalo, New York
                   February 3, 2012

                                             S/ H. Kenneth Schroeder, Jr.
                                             H. KENNETH SCHROEDER, JR.
                                             United States Magistrate Judge